Matthew R. Bainer, Esq. (SBN 220972)
THE BAINER LAW FIRM
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone: (510) 922-1802
Facsimile: (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiff Linda Collier

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA COLLIER, individually, and on behalf of all other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>v.<br><br>DELAWARE NORTH COMPANIES TRAVEL HOSPITALITY SERVICES, INC. a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 5:17-cv-01938-R (KKx)<br><br>*[Hon. Manuel Real]*<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          September 17, 2018<br>Time:          10:00 a.m.<br>Courtroom:   880<br><br>Complaint Filed: August 23, 2017<br>Trial Date:       August 21, 2018 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 17, 2018 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 880 of the above-captioned court, located at 255 East Temple Street, Los Angeles, CA 90012, the Honorable Manuel L. Real presiding, Plaintiffs will, and hereby do, move this Court to award $83,250 in attorneys' fees; $2,632.86 in litigation costs and expenses; and Class Representative Incentive Award of $2,500 for her services on behalf of the Settlement Class and for her general release of claims.

This Motion should be granted because:  (1) under the California and Ninth Circuit common fund doctrines, the fee request is reasonable when measured against the benefits conferred by the Settlement; (2) public policy recognizes that attracting competent counsel to litigate wage and hour cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks; (3) no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for the movant's services on their behalf; and (4) the Settlement Class' response to date confirms that the requested attorneys' fees, costs and expenses, and incentive awards should be approved.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of the Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards; (3) the Declaration of Matthew R. Bainer; (4) the records, pleadings, and papers filed in this action; and (5) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    FACTS AND PROCEDURE .............................................................. 2

    A.    Brief Overview of the Litigation ............................................. 2

    B.    Plaintiffs Actively Engaged in the Discovery Process ............ 2

    C.    The Parties Settled After a Full Day of Arm's-Length Negotiations at the Third Mandatory Settlement Conference .................. 3

III.   ARGUMENT ...................................................................................... 4

    A.    Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Controlling California Law ............................................................................ 5

    B.    Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable Under Ninth Circuit Precedent ..................................................................... 6

    C.    Other Factors Support Plaintiffs' Fee Request ......................... 10

        1.    The Results of the Litigation Support the Requested Fees ................................................................ 10

        2.    The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Fees ......................... 12

        3.    The Skill of Counsel and Work Performed Support the Requested Fees .......................................................... 13

    D.    The Lodestar Cross-Check Attests To the Reasonableness of the Requested Fees ................................................................. 14

    E.    Plaintiffs' Out-Of-Pocket Expenses Should Be Reimbursed ................. 15

    F.    The Incentive Awards to the Named Plaintiffs Are Fair and Reasonable ............................................................................... 16

IV.    CONCLUSION ........................................................................................... 19

Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Incentive Awards

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist.
LEXIS 118442 (C.D. Cal. Apr. 29, 2014)...................................................... 13

*Anderson v. Director, Office of Workers Compensation Programs*, 91 F.3d
1322 (9th Cir 1996) ...................................................................................... 14

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2,
2013) ............................................................................................................... 8

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................ 12

*Boeing Company v. Van Gemert*, 444 U.S. 472 (1980) ..................................... 6

*Bond v. Ferguson Enters., Inc.*, No.1:09-cv-1662-OWW, 2011 U.S. Dist.
LEXIS 70390 (E.D. Cal. June 30, 2011) ....................................................... 14

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .................. 9

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .......................................... 12

*Clark v City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986) ............................. 14

*Craft v County of San Bernardino*, 624 F Supp. 2d 1113 (C.D. Cal 2008) ................. 14

*Crommie v. PUC*, 840 F Supp. 719 (N.D. Cal. 1994) ...................................... 10

*Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825 (N.D. Cal.
Feb. 15, 2011) ............................................................................................... 13

*Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S.
Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) .............................................. 8

*Finkelstein v. Bergna*, 804 F Supp. 1235, 1239 (ND Cal 1992) ..................... 14

*Fischel v. Equitable Life Assur. Soc.*, 307 F3d 997 (9th Cir 2002) ................. 14

*Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836 (S.D.
Cal. Mar. 5, 2014) ........................................................................................ 16

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......6, 7, 12

*In re Continental Ill. Sec. Litig.*, 962 F2d 566 (7th Cir 1992) ........................................ 14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..........12, 15

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2009).................................. 8

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2014) ........................ 9

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995).................................... 9

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294 (3d Cir. 2005)................................... 12

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) .................................................................. 7

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ................................................................. 6, 11, 12, 14

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013)................................................................. 15

*Kearney v. Hyundai Motor Am.*, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013)................................................................................... 13

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013) ........................................... 10

*Magsafe Apple Power Adapter Litig.*, No. 09-1911-EJD, 2015 U.S. Dist. LEXIS 11353 (N.D. Cal. Jan. 30, 2015)................................................... 13

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)...............5, 10

*McKenzie v. Federal Express Corp.*, No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) ................................................... 14

*Missouri v Jenkins*, 491 US 274 (1989)............................................................ 14

*Moore v. PetSmart, Inc.*, No. 5:12-CV- 03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015)................................................................... 13

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................................. 13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II)*, 483 U.S. 711 (1987) ................................................... 14

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ......................................................... 16

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist.

    LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ......................................................... 13

*Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ........................ 14

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ................................................................ 7

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .................................... 7

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .................................... 9

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v.*

    *Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ......................................... 15

*U.S. v. City of San Diego*, 18 F Supp. 2d 1090 (S.D. Cal 1998) .................................... 14

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .....14, 16, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................passim


STATE CASES

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ......................................................5, 14

*City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988) .............................. 14

*Coalition for Los Angeles County Planning v. Board of Supervisors*, 76

    Cal. App. 3d 241 (1977) ......................................................................... 10

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ................................................................ 11

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ...........................5, 7, 10, 15

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ......................................................................... 5

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009) .................... 14

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) .................................. 14


STATE STATUTES

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ........................... 5

Cal. Civ. Proc. Code § 1021.5 ......................................................................................... 10

Gov't Code § 12965(b) ................................................................ 10

**SECONDARY AUTHORITIES**

4 *William B. Rubenstein et al.*, *Newberg on Class Actions* (4th ed. 2008) ................. 16

ABA Model Code Prof. Responsibility, DR 2-106(B)(8) ............................................. 12

Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90

    Yale L.J. 473, 480 ................................................................ 12

Posner, Economic Analysis of Law (4th ed. 1992) ....................................... 11

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*

    *Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,

    Issue 1, March 2004 ................................................................ 5

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

## I.    INTRODUCTION

Plaintiff pursued this class action to secure important workplace protections for current and former employees of Defendant Delaware North Companies Travel Hospitality Services, Inc. ("Delaware North") despite the considerable risk and uncertainty associated with litigating their claims, Plaintiff secured a $250,000.00 settlement fund that will provide timely monetary relief to the members of the settlement class.[1]

Having obtained valuable relief for the Class, Plaintiff seeks an award of attorneys' fees in the amount of $83,250, or one-third of the total settlement fund. The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results obtained by Plaintiff's counsel, the complexities of the litigation, and the contingent risk assumed by Plaintiff's counsel. The percentage of the fund requested is entirely consistent with fee awards in similar cases, including recent decisions in comparable wage and hour class litigation that awarded fees ranging from 30 to 40 percent of the common fund. To date, not a single Class Member has objected to Plaintiff's request for attorneys' fees.[2]

Other factors support this fee request. Plaintiff's counsel delivered significant results to the Class in the face of adverse conditions and assumed substantial risk in litigating this action on a contingency basis, having invested significant time and energy toward the zealous prosecution of Plaintiff's claims. These hours were spent: (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Joint Stipulation of Class Action Settlement and Release.
[2] As discussed in detail in the contemporaneously filed Motion for Final Approval of Class Action Settlement, 6 objection forms were received by the claims administrator. However, none of these identified the amount of the requested attorneys' fees, costs or incentive award as the basis for any objection.

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

witnesses, and obtaining documents in support of Plaintiff's eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting the preliminary and final approval papers.

Plaintiff's counsel also seeks reimbursement for their litigation costs and expenses in the amount of $2,632.86. These costs and expenses were incurred in connection with the prosecution and settlement of the action and are thus reimbursable. Finally, the Court should award an incentive award to the Class Representative.

For the reasons set forth in greater detail below, Plaintiff respectfully submits that the requested attorneys' fees, costs and expenses, and incentive award are fair and reasonable, and should be approved.

II.   **FACTS AND PROCEDURE**

   A.   **Brief Overview of the Litigation**

On August 23, 2017, Plaintiff filed a Complaint against Defendant in the San Bernardino Superior Court of the State of California. (Docket No. ("Doc") 1, Ex. A.)

On September 21, 2017, Defendant timely answered Plaintiff's Complaint. (Doc. 1, Ex. B.) On September 22, 2017, Defendant timely removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and under federal question jurisdiction under 28 U.S.C. § 1331. (*See* Notice of Removal, Doc. 1.)

On December 19, 2017, Plaintiff filed a First Amended Complaint ("FAC"). (Doc. 20).  On February 12, 2018, Plaintiff filed a Second Amended Complaint ("SAC").  (Doc. 27).

Plaintiff asserts eleven causes of action: (1) "Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime)"; (2) "Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages)"; (3) "Violation of California Labor Code § 226.7 and 512(a) (Unpaid Meal Period Premium)"; (4) "Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (5) "Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination)"; (6) "Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements)"; (7) "Violation of Labor Code §§ 2698, et seq. ("PAGA"); (8) "Violation of California Business & Professions Code §§ 17200, et seq."; (9) "Violation of Labor Code § 226 and 1174 and IWC Wage Order No.5-2001, § 7 (failure to maintain required business records)"; (10) "Violation of Labor Code § 2802 (failure to indemnify for business expenses)"; and (11) "Failure to Pay All Wages and Overtime Compensation in Violation of the Fair Labor Standards Act".  (SAC ¶¶ 43-116).

**B.    Plaintiff Actively Engaged in the Discovery Process**

Plaintiff has conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of the proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof.  For example, Defendant produced over one thousand five hundred pages of documents and data, including Plaintiff's time records and wage statements, Defendant's policies regarding meal and rest breaks, timekeeping, overtime, and reimbursements, and an agreed-upon sampling of 100 putative Class Member records.  The parties also exchanged Rule 26 Initial Disclosures. Using this information, Plaintiff's counsel was able to determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked

1  during the Class Period, and the total number of former employees during the Class
2  Period.  (Bainer Decl. ¶ 3.)

3          Plaintiff's Counsel performed an extensive investigation into the claims at issue,
4  including (1) determining the suitability of the putative class representatives through
5  interviews, background investigations, and analyses of employment files and related
6  records; (2) researching wage-and-hour class actions involving similar claims; (3)
7  acquiring information regarding putative Class Members' potential claims, identifying
8  additional witnesses, and obtaining documents in support of Plaintiff's eventual Motion
9  for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies
10  and procedures; (5) researching the latest case law developments bearing on the theories of
11  liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of
12  claims; (8) reviewing samplings of class member punch-in and punch-out records; (8)
13  negotiating the terms of this Settlement; (9) finalizing the Joint Stipulation of Class Action
14  Settlement and Release; and (10) drafting preliminary approval papers.  The
15  document and data exchanges allowed Plaintiff's counsel to assess the strengths and
16  weaknesses of the claims against Defendant and the benefits of the proposed Settlement.
17  (Bainer Decl. ¶ 4.)

18          **C.    The Parties Settled After Months of Arm's-Length Negotiations**

19          After reviewing and analyzing the documents and records produced, the parties
20  discussed their respective analyses of the potential damages, but no settlement could be
21  reached.  Only after several rounds of negotiations spanning several weeks regarding the
22  specific economic and non-economic terms of the class-wide settlement agreement was a
23  memorandum of understanding reached.  The parties continued to negotiate the final terms
24  of the settlement agreement when finalizing the Joint Stipulation, debating over the
25  formula for calculating payment to the Class Members, the timing of the notice to the
26  Class Members, as well as the procedures for objecting and opting out of the agreement.

1  In total, counsel for the parties engaged in settlement negotiations for a period of more

2  than three months and exchanged almost a half-dozen demands and counter-offers.  Only

3  after these settlement negotiations were the parties ultimately able to reach an agreement

4  to settle the Action with a non-reversionary, common fund pursuant to the Agreement.

5  (Bainer Decl. ¶ 5.)

6  **III.    ARGUMENT**

7  **A.    Plaintiffs' Request for Attorneys' Fees in the Amount of Thirty
          Percent of the Common Fund Is Reasonable Under Controlling

8          California Law**

9          In diversity actions, federal courts look to state law in determining whether a

10  party has a right to attorneys' fees and how to calculate those fees.  *Mangold v. Calif.*

11  *Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent

12  has applied state law in determining not only the right to fees, but also in the method of

13  calculating the fees").  The state law governing the underlying claims in a diversity

14  action "also governs the award of fees."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

15  1047 (9th Cir. 2002).  Because Plaintiffs brought their claims under the California Labor

16  Code and California Business & Professions Code section 17200, California law

17  governs.

18          Under California law, the common fund method for awarding attorneys' fees is

19  appropriate where, as here, attorneys have been instrumental in creating a settlement

20  fund that benefits all class members.[3]  Although California has no benchmark, California

21  courts routinely award attorneys' fees equalling one-third of the common fund's total

22  potential value.[4]  *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)

---

23  [3] *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long

24  recognized that when attorneys create a common fund that benefits a class, the attorneys have an
    equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48

25  (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than
    process-oriented, it better approximates the workings of the marketplace' than the lodestar approach."

26  [citation omitted]).

    [4] *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber*

27  *v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award);
    *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham*

28  *Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v.*

1   ("[S]tudies show that . . . fee awards in class actions average around one-third of the

2   recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements:  An*

3   *Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35

4   (independent studies of class action litigation nationwide have come to a similar

5   conclusion that a one-third fee is consistent with market rates).  Under California law,

6   therefore, an award of attorneys' fees equalling one-third of the non-reversionary

7   settlement fund is presumptively reasonable.

8   **B.     Plaintiffs' Request for Attorneys' Fees in the Amount of One-Third of**
9   **the Common Fund Is Reasonable Under Ninth Circuit Precedent**

10   Although this motion is governed by California law, Plaintiffs' fee request is also

11   reasonable under federal law.  The Supreme Court has consistently recognized that "a

12   litigant or a lawyer who recovers a common fund for the benefit of persons other than

13   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

14   *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396

15   U.S. 375, 392-93 (1970).  The purpose of this doctrine is that "those who benefit from

16   the creation of the fund should share the wealth with the lawyers whose skill and effort

17   helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

18

19   *20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*,
    No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.:
20   39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health
    Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No.
21   BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential Brokerage Co.*, No.
    BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic Mortuary Servs., Inc.*, No. BC408054 (L.A.
22   Super. Ct.) (33% award); *Mares v. BFS Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super.
    Ct.) (33% award); *Blair et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award);
23   *Perez and Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.) (33%
    award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 9000517 (San Bernardino Super. Ct.) (33% award);
24   *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.) (33% award); *Clymer and Benton
    v. Candle Acquisition Co.*, No. BC328765 (L.A. Super. Ct.) (33% award); *Dunlap v. Bank of America,
25   N.A.*, No. BC328934 (L.A. Super Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP
    4331 (San Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No. BC328111
26   (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782 (L.A. Super Ct.) (33% award);
    *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A. Super. Ct.) (33% award); *Boncore v. Four Points
27   Hotel ITT Sheraton*, No. GIC807456 (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*,
    No. BC290071 (L.A. Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A.
28   Super. Ct.) (40% award).

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1300 (9th Cir. 1994).

The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" where—as here—"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* (*citing Van Gemert*, 444 U.S. at 479).

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method proposed here. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 2013). The percentage method, however, is the dominant approach in common fund cases. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Where, as here, fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the

1    "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d

2    at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993)

3    ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the

4    lodestar method.").

5        Moreover, the common fund method better "approximates the workings of the

6    marketplace than the lodestar approach" in setting the price of contingent fees. *Lealao*,

7    82 Cal. App. 4th at 48 (quoting *In re Thirteen Appeals Arising Out of San Juan Dupont*

8    *Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).  This is because the

9    percentage method "provide[s] incentives roughly comparable to those negotiated in the

10   private bargaining that takes place in the legal marketplace." *Id.*  In this way, applying

11   the percentage method advances the judicial policy of "award[ing] counsel the market

12   price for legal services." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).  In light

13   of these benefits and the creation of a common fund, this Court should apply the

14   percentage-of-the-fund approach in determining attorneys' fees.

15       The Ninth Circuit has generally established 25% of a common fund as a

16   "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047.  However, the Ninth

17   Circuit has also stated that the benchmark is the "starting point for analysis" and that "it

18   may be inappropriate in some cases." *Id.* at 1048.  The "[s]election of the benchmark or

19   any other rate must be supported by findings that take into account all of the

20   circumstances of the case." *Id.*  The district court's duty is to not presume benchmark

21   percentage applies, but simply "whether in arriving at its percentage it considered all the

22   circumstances of the case and reached a reasonable percentage."[5]  *Id.*

23       Thus, the "exact percentage [awarded] varies depending on the facts of the case,

24   and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v.*

25

26       _____

         [5] One factor *Vizcaino* identified was the percentage awarded in other cases, which it stated
27   reflects the lawyers' reasonable market expectations. *Vizcaino*, 290 F.3d at 1050.  The *Vizcaino*
     court ultimately found the requested 28% to be reasonable, in part, by reference to a table collecting cases that
28   settled between $50 and $200 million between 1996 and 2001 that deployed the percentage method,
     showing that a majority was "clustered around the 20%-30 range." *Id.* at 1050 n. 4.

*Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); *In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2009) (in "most common fund cases, the award exceeds that benchmark"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage").

Like California courts, district courts within this circuit routinely award attorneys' fees of approximately one-third of the common fund, particularly for wage and hour class action settlements.[6]  In awarding 34% of the common fund to class counsel in an employment case, Judge Morrow explained that an award of 34% of the fund "is supported by the fact that typical contingency fee agreements provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried." *Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S. Dist. LEXIS 123546, *54-57 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements).  In sum, longstanding approval by California district courts for 33% in fees for settlements in wage and hour class actions—along with the stated rationale for that percentage—support the reasonableness of Plaintiff's attorneys' fees

---

[6] *See, e.g., Bernal v. DaVita, Inc.*, No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) (awarding attorneys' fees in the amount of one-third of the common fund); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013) (awarding one-third of the settlement fund in a wage and hour class action because there were "sufficient reasons to  exceed [the benchmark] considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits");.

request.[7]

Importantly, the calculation of attorneys' fees is a percentage of the *entire*
potential benefit created by class counsel, rather than just the amount claimed against the
fund. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2014)
("[D]istrict court did not err in calculating the attorneys' fees award by calculating it as a
percentage of the total settlement fund, including notice and administrative costs, and
litigation expenses"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th
Cir. 1997); *Six Mexican Workers*, 904 F.2d at 1311 ("The Supreme Court has stated that
attorneys' fees sought under a common fund theory should be assessed against every
class members' share, not just the claiming members.").

Accordingly, Plaintiffs' request for attorneys' fees in the amount of $83,250, or
one-third of the $250,000 common fund, is consistent with established Ninth Circuit
precedent.

## C.    Other Factors Support Plaintiffs' Fee Request

In addition to the results achieved and awards in comparable cases, courts in this
Circuit have also considered additional factors when evaluating the fairness of the award.
These factors include:  (1) the risks of further litigation; (2) the contingent nature of the
fee; (3) the skill of the attorneys; and (4) a lodestar cross-check.  *Churchill Vill., L.L.C. v.
Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d
1370, 1375 (9th Cir. 1993).  While no single factor is determinative of reasonableness,
each factor supports Plaintiffs' request for attorneys' fees in the amount of one-third of
the common fund.

### 1.    The Results of the Litigation Support the Requested Fees

By taking action to enforce state and federal labor laws, Plaintiffs and Plaintiffs'
counsel have vindicated the rights of hundreds of Defendant's employees and have

---

[7] Awards of 30% are likewise routinely upheld by the Ninth Circuit.  *See*, *e.g.*, *In re Mego Fin.
Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac.
Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million
common fund).

secured $250,000 in relief for their claims.  The relief offered by the settlement is particularly valuable when viewed against the difficulties encountered by Plaintiffs pursuing wage and hour cases.  Indeed, the Ninth Circuit has recognized that complex litigation is often necessary to effectively enforce workplace protection legislation:

> The California Labor Code protects all workers regardless of their immigration status or financial resources. In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.

*Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013).  By obtaining a significant recovery for the class, Plaintiff's counsel has vindicated the rights of workers and enforced compliance with important workplace regulations.

Additionally, the public interest served by Plaintiff's lawsuit likewise supports the requested award of attorneys' fees.  In *Lealao*, 82 Cal. App. 4th 19, the court held that in determining the appropriate award of attorneys' fees, the trial court should consider the need to encourage the private enforcement necessary to vindicate many legal rights, as well as the role that representative actions play in relieving the courts of the need to separately adjudicate numerous claims.  Likewise, the "importance of the suit" and the "public nature of the plaintiff's position" were factors relied on in *Coalition for Los Angeles County Planning v. Board of Supervisors*, 76 Cal. App. 3d 241, 251 (1977).  The "public interest value" of plaintiff's individual age discrimination actions was also used to augment the fee award under CCP §1021.5 and Gov't C §12965(b) in *Crommie v. PUC*, 840 F Supp. 719, 726 (N.D. Cal. 1994), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th Cir 1995).

Given the well-received results on behalf of the class, Plaintiff's action will undoubtedly deter other similarly situated employers from taking advantage of their employees.  In a related vein, unless competent attorneys are fully compensated when they take on large corporate Defendants, unlawful practices at issue here will likely go

unchecked.

## 2. The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Fees

The contingent risk that Plaintiff's counsel assumed in prosecuting the action supports the requested attorneys' fees and costs. Plaintiff's counsel took this case on a pure contingency basis, and had no guarantee that they would receive any remuneration for the many hours (over 100) they spent litigating the Class' claims, or for the $2,632.86 in out-of-pocket costs they reasonably incurred during the matter's pendency.

Large-scale litigation of this type is, by its very nature, complicated and time-consuming. Any law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature[8] of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind. *See Vizcaino*, 290 F.3d at 1051 ("[A]ttorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional claimants' firms. For these reasons, California courts and the Ninth Circuit recognize a need to reward plaintiffs' counsel who accept a case on a contingency basis. In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to upwardly adjust fee compensation to ensure that the fees account for contingency risk. *Ketchum*, 24 Cal. 4th at 1133 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award

---

[8] Plaintiffs in wage and hour cases can rarely afford representation on an hourly basis, at least not representation by firms known for achieving laudatory results.

cases.")  Similarly in *In re Washington Pub. Power Supply*, the Ninth Circuit underscored the importance of rewarding attorneys who take cases on a contingency basis.  *In re Washington Pub. Power Supply.*, 19 F.3d at 1299, 1300-01 ("in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

Accordingly, attorneys accepting contingent fee cases should be compensated in amounts greater than those earned by attorneys who bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent practice.  Were it otherwise, it would be economically irrational for any attorney to accept a contingent-fee case because there would be absolutely no incentive to accept the risks inherent in such representation.[9]

### 3.   The Skill of Counsel and Work Performed Support the Requested Fees

The skill and experience of counsel and nature of work performed, also militate in favor of Plaintiff's fee request.  *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992).  Plaintiff's counsel is a seasoned attorney with considerable experience in wage and hour class actions.  Plaintiff's counsel regularly litigates wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions.  (*See* Bainer Decl. ¶¶ 6-7) Plaintiff's counsel thoroughly investigated Plaintiff's claims and made skillful use of documents and data provided by

---

[9] *See* Posner, Economic Analysis of Law (4th ed. 1992), pp. 534, 567 ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."); Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."); ABA Model Code Prof. Responsibility, DR 2-106(B)(8) (recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable).

1   Defendants to assess its potential exposure as to the claims at issue and to bring the

2   litigation to a successful resolution.

3

### 4.    The Lodestar Cross-Check Attests to the Reasonableness of the Requested Fees

4

5   As set forth above, Plaintiff's fee request is premised primarily on a percentage of

6   the settlement value, the prevailing method in cases of this kind.  However, after making

7   that determination, this Court may also use a lodestar analysis as a final "cross-check" on

8   the percentage method.  *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d at

9   1296-98.  Where the use of the lodestar method is used as a cross-check, it can be

10  performed with a less exhaustive cataloguing and review of counsel's hours.[10]

11  The lodestar method is calculated by multiplying "the number of hours

12  reasonably expended on the litigation . . . by a reasonable hourly rate."  *In re Bluetooth*

13  *Headset Products Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011).  In considering rates,

14  courts examine the rate "prevailing in the community for similar services by lawyers of

15  reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S.

16  886, 895 n.11 (1984).

17  The rate charged by Plaintiff's counsel ($750/hr.) is within the range of rates

18  judicially approved for comparable attorneys specializing in plaintiff's-side class actions

19  in Northern California.[11] Counsel's rates are also comparable to those judicially

20  approved for other plaintiff's firms, such as Baron & Budd (rates ranging from $775 for

21

22  [10] *See In re Rite Aid Corp. Secs. Litig*., 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune*

23  *Response Sec. Litig*., 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for

24  purposes of lodestar cross-check.").

25  [11] This district has found that, for class counsel litigating in the Bay Area, reasonable hourly rates for partners range from $560 to $800.  *See, e.g.*, *Magsafe Apple Power Adapter Litig*., No. 09-1911-EJD, 2015 U.S. Dist. LEXIS 11353, at *14 (N.D. Cal. Jan. 30, 2015); *Rose v. Bank of Am. Corp.*, No. 5:11-

26  CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *12 (N.D. Cal. Aug. 29, 2014) (finding reasonable partners rates between $350 - $775 per hour); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL

27  5948951, at *8 (N.D. Cal. Nov. 28, 2012) (finding reasonable partner rates of $725 - $797); *In re High Tech Employment Antitrust Litigation*, No. Case No. 11–CV–02509–LHK, 2015 WL 5158730 (N.D.

28  Cal. 2015) (approving rates of $490 to $975 for partners).

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

the requested partner), Wasserman Comden Casselman & Essensten (rates ranging from $670-750 for partners), and Blood Hurst & Reardon ($510-695 for partners).  *See Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, *40-41 (C.D. Cal. Apr. 29, 2014)  Other courts have approved hourly rates in this range for plaintiff's side law firms in the Southern California area, where this case was filed.[12]

Multiplying ccounsel's hourly rate by the total hours billed to the litigation yields a lodestar of $82,275.[13]  Bainer Decl. ¶8. California state courts and federal courts regularly award multipliers on top of the actual billing amounts of 2 and higher.[14]  Here, Plaintiff's counsel's request for $83,250 in fees represents a negligible multiplier to the amount of fees billed in the litigation.

### E.    Plaintiffs' Out-Of-Pocket Expenses Should Be Reimbursed

Defendants have agreed to pay Plaintiff's counsel's litigation expenses as part of

---

[12] *See, e.g., Kearney v. Hyundai Motor Am.*, 2013 U.S. Dist. LEXIS 91636, *24 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675); *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825, * 2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of $650 an hour for partner services); *Richard v. Ameri-Force Mgmt. Servs., Inc.*, No. 37-2008-00096019 (San Diego Super. Ct., Aug. 27, 2010) ($695 to $750 an hour for partners); *Barrera v. Gamestop Corp.*, No. CV 09-1399 (C.D. Cal. Nov. 29, 2010) ($700 an hour for partners); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480 (C.D. Cal. June 20, 2010) ($655 to $750 an hour for partners); *Luquetta v. Regents of Cal.*, CGC-05-443007 (San Francisco Super. Ct.) (approving 2012 partner rates between $550 and $850 per hour); and *Holloway v. Best Buy Co.*, C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700).

[13] This does not include the additional time Plaintiff's Counsel will expend preparing for and appearing on the Motion for Final Approval of Settlement.

[14] *See, e.g., City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988) (affirming a 2.34 multiplier without remand); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier on a lodestar cross-check); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (applying a 2.5 multiplier in a consumer class action); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming a lodestar multiplier of 3.65 on a cross-check after analyzing a table of the most commonly applied multipliers); *Craft v County of San Bernardino*, 624 F Supp. 2d 1113, 1125 (C.D. Cal 2008) (finding 25 percent of fund recovered, constituting 5.2 multiplier, reasonable); *McKenzie v. Fed. Express Corp.*, No. 10-02420, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) (approving percentage-based award equivalent to a 3.2 multiplier in a wage and hour class action); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995);  *see also Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65); *McKenzie v. Federal Express Corp.*, No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) (approving a multiplier of 3.2 on a lodestar cross-check in awarding percentage-based fees in wage and hour class action); *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW, 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. June 30, 2011) (1.75 multiplier).

the negotiated settlement. For these expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted). In California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc*., No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Plaintiff's Counsel has expended $2,632.86, which includes court fees, administrative expenses, and travel expenses that would normally be billed to a paying client. (Bainer Decl. ¶ 9) The expenses counsel advanced on behalf of the Class should be reimbursed. Counsel's request for $2,632.86 is thus fair and reasonable.

**F.    The Incentive Awards to the Named Plaintiff Is Fair and Reasonable**

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be

1   necessary to induce [the class representative] to participate in the suit").

2          So long as the incentive award does not create a conflict of interest between the

3   representatives and class members,[15] modest payments to named plaintiff for her

4   services as class representative are customary and generally approved.  *See Van Vranken*

5   *v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995).  To determine whether

6   the proposed incentive award is fair and reasonable, many courts in the Ninth Circuit

7   apply the "five-factor test set forth in *Van Vranken*."  *Grant v. Capital Mgmt. Servs.,*

8   *L.P.*, 2014 U.S. Dist. LEXIS 29836 *19 (S.D. Cal. Mar. 5, 2014).  Under the *Van*

9   *Vranken* test, courts consider: (1) the risk to the class representative in commencing suit,

10  both financial and otherwise; (2) the notoriety and personal difficulties encountered by

11  the class representative; (3) the amount of time and effort spent by the class

12  representative; (4) the duration of the litigation and; (5) the personal benefit (or lack

13  thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*,

14  901 F. Supp. at 299 (citations omitted).  However, not all factors need to present.

15  Rather, the Court may weigh the factors and, award fees that are "just and reasonable

16  under the circumstances."  *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate*

17  *Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing

18  *Van Vranken*, 901 F. Supp. at 299).  Here, the proposed incentive award of $2,500 is just

19  and reasonable.

20         First, the incentive award is justified in light of the reputational risk that Plaintiff

21  has assumed by litigating claims against a current employer.  *See Guippone v. BH S&B*

22  *Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y.

23  Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the

24  ───────────────────────

25  [15] The facts here do not create or exacerbate actual or potential conflicts between the class
    representatives and the class—the primary ground for denying enhancement awards.  *See Radcliffe v.*

26  *Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding that an agreement conditioning
    incentive payment on approving the class action settlement created a conflict between the class and the

27  Plaintiff in denying the incentive award and settlement); *Rodriguez v. Disner*, 688 F.3d 645, 651 (9th
    Cir. 2012) (finding an agreement conditioning incentive payment requests to the amount recovered by

28  the class to be improper).  Here, there is no agreement of any kind that ties Plaintiffs' request for
    incentive payments to any condition.

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1  internet and may become known to prospective employers when evaluating the person . .
2  . Even where there is not a record of actual retaliation, notoriety, or personal difficulties,
3  class representatives merit recognition for assuming the risk of such for the sake of
4  absent class members."). Employers commonly screen employee candidates to
5  determine whether they have ever filed suit, and employee candidates who might be
6  branded "litigious" are likely to be screened out of the process. In fact, an entire industry
7  has developed for providing employers with background information on employee
8  candidates. By bringing this action against an employer, Plaintiff has assumed
9  considerable reputational risk that may impact her ability to find employment in the
10  future. Long after this action is forgotten by Class Members, the Named Plaintiff will
11  run the risk of being branded "litigious" by prospective employers, and may be denied
12  future employment on that basis.

13  Second, the incentive awards should be awarded to Plaintiff because she
14  "remained fully involved and expended considerable time and energy during the course
15  of the litigation." *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012
16  U.S. Dist. LEXIS 189830, *61 (C.D. Cal. Nov. 13, 2012) (citation omitted). Plaintiff
17  expended relatively considerable time and effort assisting her attorneys with the
18  prosecution of the class' claims given the early procedural posture of the action, and her
19  unique contributions should be rewarded.

20  Third, the incentive award is appropriate because Plaintiff otherwise "will not
21  gain any benefit beyond that he [or she] would receive as an ordinary class member." *In
22  re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299
23  (holding that a substantial award is appropriate where a class representative's claim
24  made up "only a fraction of the common fund."). Here, absent the incentive award,
25  Plaintiff will recover no more than other Class Members, despite undergoing personal
26  sacrifices in bringing this suit on behalf of the Class.

27  Moreover, Plaintiff has also agreed to generally release all claims she may have

28

against Defendants. This general release is considerably broader than the separate, narrower releases required of Class Members. *See Schaffer*, 2012 U.S. Dist. LEXIS 189830, at *64 ("[C]lass representatives released their actual damages claims as part of the Settlement. This ["personal benefit"] factor, therefore weighs in favor of approving the incentive awards.")

The amounts of the requested incentive award is also reasonable by reference to the amounts that California state and federal courts have repeatedly found to be reasonable for wage and hour class action settlements.[16] In sum, due to the effort, commitment, and personal sacrifice of the Named Plaintiffs, all Class Members can now benefit from a $250,000 settlement. Thus, the proposed incentive awards for Plaintiff's services as class representative, her general release of all claims she has against Defendant, her assistance in prosecuting the claims, her review of the proposed settlement to ensure that its terms are fair and provide adequate relief for the Class, and the risk of being branded "litigious" by prospective employers, are reasonable and deserved.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant: (1) an award of attorneys' fees in the amount of one third of the common fund, or $83,250;

---

[16] *Chambers v. White Memorial Medical* Center, No. BC426335 (Los Angeles County Superior Court June 11, 2012; Judge Highberger) (awarding $40,000 incentive awards and valuing the general releases at $30,000); *Pangan v. East L.A. Doctors Hospital, LP*, No. BC431371 (Los Angeles County Superior Court May 1, 2012; Judge Wiley Jr.) (awarding $20,000 incentive award); *Knight v. CBS Personnel Holdings, Inc.*, No. BC424383 (Los Angeles County Superior Court Sept. 12, 2011; Judge Johnson) (awarding $20,000 incentive award); *Kabamba v. Victoria's Secret Stores LLC*, No. BC368528 (Los Angeles County Superior Court Aug. 19, 2011; Judge Highberger) (awarding $25,000 and $15,000 incentive awards); *Martin v. Kaiser Foundation Hospitals*, No. BC395992 (Los Angeles County Superior Court Mar. 29, 2010; Judge Johnson) (awarding $90,000 incentive awards); *Noblitt v. Qwest Communications Corporation dba Qwest Communications International, Inc.*, No. BC358302 (Los Angeles County Superior Court Jan. 8, 2010; Judge Johnson) (awarding $25,000 incentive awards); *Zamora v. Balboa Life & Casualty LLC*, No. BC360026 (Los Angeles County Superior Court Mar. 7, 2013; Judge Buckley) (awarding $25,000 incentive award); *Magee v. American Residential Services, LLC*, No. BC423798 (Los Angeles County Superior Court Apr. 21, 2011; Judge Mooney) (awarding $15,000 incentive award); *Mares v. BFS Retail & Commercial Operations, LLC*, No. BC375967 (Los Angeles County Superior Court June 24, 2010; Judge Bryant-Deason) (awarding $15,000 incentive awards); *Felix v. Automobile Club of Southern California*, No. 07CC01421 (Orange County Superior Court Nov. 19, 2014; Judge Dunning) (awarding $15,000 incentive awards).

(2) $2,632.86 in out-of-pocket expenses to be reimbursed to Plaintiffs' counsel; and (3) an incentive award to the Named Plaintiff and Class Representative in the amount of $2,500.

Dated: August 20, 2018                      THE BAINER LAW FIRM

                                            By: */s/ Matthew R. Bainer*
                                                 Matthew R. Bainer
                                                 Attorneys for Plaintiff
                                                 Linda Collier

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS